UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| ADDIE MICHELLE OLIVER, | } |
| Plaintiff, | } |
| v. | } Case No.: 6:13-CV-01320-MHH |
| CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration, | } |
| Defendant. | } |

# MEMORANDUM OPINION

Plaintiff Addie Michelle Oliver brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) seeking judicial review of a final adverse decision of the Commissioner of Social Security, affirming the decision of the Administrative Law Judge ("ALJ") who denied Ms. Oliver's Title II claim for a period of disability and disability insurance benefits, and her Title XVI claim for supplemental security income. (TR 1-3). After careful review, the Court finds that substantial evidence supports the ALJ's decision. Therefore, the Court affirms the Commissioner's ruling.

# STANDARD OF REVIEW

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s]

the ALJ's 'factual findings with deference' and her 'legal conclusions with close scrutiny.'" *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In making this evaluation, the Court may not "reweigh the evidence or decide the facts anew," and the Court must "defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it." *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx 929, 930 (11th Cir. 2013).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## PROCEDURAL AND FACTUAL BACKGROUND

On August 11, 2009, Ms. Oliver[1] filed an application for a period of disability and disability insurance benefits and an application for supplemental security income.[2] (Doc. 10, p. 1; TR 12). In both applications, Ms. Oliver alleged that her disability began on January 15, 2009. (TR 12, 114, 122).[3] The Social Security Administration denied both claims on November 13, 2009. (TR 73-74). Ms. Oliver then filed a written request on December 18, 2009 for a hearing before an ALJ. (Doc. 10, p. 1; TR 80).

The ALJ held an initial hearing on December 30, 2010 (TR 55) and a supplemental hearing on April 20, 2011. (TR 38). At the time of the initial hearing, Ms. Oliver was 33 years old, and she had an eleventh grade education. (TR 58, 148). Ms. Oliver has special job training in business and as a certified nursing assistant. (TR 58, 148). Her past relevant work is as a certified nursing assistant, a poultry deboner, and a furniture assembler. (TR 47, 154).

---

[1] When Ms. Oliver filed her applications, her name was Addie Michelle Baker. (TR 114, 122).

[2] The ALJ and the parties state that Ms. Oliver filed both applications on August 11, 2009; however, both the Application Summary for Disability Insurance Benefits and the Application Summary for Supplemental Security Income from the Social Security Administration list the application date as September 28, 2009. (TR 114, 122). This discrepancy is immaterial to the Court's analysis.

[3] On December 1, 2010, Ms. Oliver amended her applications to allege that her disability began on July 17, 2009. (TR 138).

3

On June 14, 2011, the ALJ denied Ms. Oliver's claim for a period of disability and disability insurance benefits and her claim for supplemental security income. (TR 12-25). The ALJ found that Ms. Oliver has not engaged in substantial gainful activity since July 17, 2009, the alleged onset date. (TR 14). The ALJ determined that Ms. Oliver had the following severe impairments:

> major depressive disorder, with psychotic features, currently in remission; anxiety disorder, not otherwise specified; post-traumatic stress disorder; crystal methamphetamine dependence by history; and benzodiazepine and opiate abuse versus dependency by history.

(TR 15). The ALJ also concluded that Ms. Oliver has the following non-severe impairments: obesity, lumbago, cervicalgia, and bronchitis. (TR 15, 298). Nevertheless, the ALJ found that Ms. Oliver does not have an impairment or a combination of impairments that meets or medically equals a listed impairment in the Regulations. (TR 15).

The ALJ determined that Ms. Oliver has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels. But, the ALJ noted that Ms. Oliver "is restricted to occasional interaction with supervisors, coworkers, and the general public." (TR 16). The ALJ concluded that based upon Ms. Oliver's RFC, she could perform her past relevant work as a furniture assembler and as a poultry deboner. (TR 24). The ALJ also noted that there were other jobs that exist in significant numbers in the national economy that Ms. Oliver can perform, including garment folder, packager, and assembler. (TR 25, 48, 49).

Accordingly, the ALJ determined that Ms. Oliver is not disabled as that term is defined in the Social Security Act. (TR 25). On May 22, 2013, this became the final decision of the Commissioner when the Appeals Council refused to review the ALJ's decision. (TR 1). Having exhausted all administrative remedies, Ms. Oliver filed this action for judicial review pursuant to 42 U.S.C. §405(g) and §1383(c)(3).

## MEDICAL EVIDENCE

In evaluating Ms. Oliver's claim for benefits, the ALJ reviewed Ms. Oliver's history of mental illness and psychiatric treatment. In February 2003, Ms. Oliver was hospitalized for depression and suicidal ideation. (TR 224). Ms. Oliver reported feeling overwhelmed, and on the day of her admission, she had "crying spells" and "felt suicidal." (TR 224). Ms. Oliver was discharged after one night because she was stabilized on medication and was no longer suicidal. (TR 224). After this incident, Ms. Oliver sought treatment at Alabama Psychiatric Services on seven occasions between February 2003 and July 2003. (TR 18, 226-234). Doctors diagnosed Ms. Oliver with moderate depression. (TR 227).

Ms. Oliver did not seek psychiatric care again until 2008 when she began treatment at Riverbend Center for Mental Health. In March 2008, Dr. Warren Scott diagnosed Ms. Oliver with major depressive disorder, generalized anxiety disorder, and intermittent explosive disorder. (TR 297). In April 2008, Ms. Oliver

was diagnosed with "amphetamine dependence with personality disorder and a mood disorder not otherwise specified."[4]  (TR 18, 271, 279, 280).  The ALJ found that although Ms. Oliver was placed in an intensive outpatient program for chemical dependency and ordered to attend "AA/NA" meetings, the record lacked evidence of her compliance with the program after April 2008. (TR 18, 268, 271, 273, 274, 275).  The ALJ noted that Ms. Oliver was released from the program in June 2008 when she obtained a job. (TR 18, 265).

While Ms. Oliver was working, her GAF scores during her 2008 follow-up appointments at Riverbend were either 55 or 60.[5][6] (TR 18, 265, 268, 272). Also, the ALJ noted that while Ms. Oliver alleged that her disability onset date was July 17, 2009, the Riverbend records indicate that a week after her alleged onset date, Ms. Oliver reported on July 22, 2009 that her mood swings were "completely stable." (TR 18, 261).  The ALJ also noted that her GAF score had increased to 65 at this time.[7] (TR 18, 261).

---

[4] Ms. Oliver reported to Dr. Scott that she was recently arrested for the manufacture and possession of Meth and was awaiting trial.  She smoked/inhaled 1 gram of Meth daily, she had been using Meth for "x 8 years," and she had a history of abusing Lortab and Xanax. Ms. Oliver also met 6 of 7 criteria for chemical dependency. (TR 18, 276, 277).

[5] A GAF of 51-60 is indicative of moderate symptoms or moderate difficulty in social, occupational, or school functioning.  (TR 18).

[6] In an April 24, 2008 Psychiatric Evaluation, Dr. Scott reported a one-time GAF of 50. (TR 271).  Also, at her initial assessment at Riverbend on March 14, 2008, her GAF score was 42. (TR 279).  Both scores predate Ms. Oliver's employment in June 2008.

While reviewing Ms. Oliver's most recent medical records from Riverbend, the ALJ found that at each of her 2010 follow-up appointments, Ms. Oliver was consistently assessed a GAF score of 65.[8] (TR 18, 399, 405, 406, 410, 414). Specifically, the ALJ noted that at Ms. Oliver's June 2010 appointment, she reported that her "mood swings [were] completely stable," and Ms. Oliver denied "experiencing any problems." (TR 19, 406). Also, the ALJ noted that at her September 2010 appointment, Ms. Oliver reported that she was "doing fine" and that she no longer needed medication. (TR 19, 404).[9] Additionally, Ms. Oliver's 2010 mental status reports state that she had no psychosis or suicidal ideation. (TR 19, 404, 409, 414, 418).

Ms. Oliver's follow-up appointments were routinely three to four months apart, which is "not indicative of the disabling symptoms or limitations alleged but rather indicative of good control of symptoms and not of the frequency or severity to require any more frequent care." (TR 19, 399, 404, 406, 410, 414, 418).

---

[7] A GAF of 65 indicates that the claimant has some mild symptoms or some difficulty in social, occupational, or school functioning, but the claimant generally functions pretty well and has some meaningful interpersonal relationships. (TR 18).

[8] There were a total of five follow-up appointments in 2010 dated January 20, May 20, June 30, September 23, and November 24. (TR 399, 404, 406, 410, 414, 418).

[9] Specifically, Ms. Oliver reported that she felt like she no longer needed the medication Geodon. The physician refused to discontinue Geodon, and Ms. Oliver also continued to take Prozac, doxepin, hydroxyzine, and Inderal. (TR 404).

Ms. Oliver saw five doctors in connection with her impairments, and the ALJ gave controlling weight to Dr. Scott's opinion for the following reasons:

> [H]e has an established treating relationship with [Ms. Oliver] and his opinions are supported by objective, clinical evidence. They are supported by [Ms. Oliver]'s reported daily activities, including her being responsible for the care of her son without any particular assistance.

(TR 19). Dr. Scott found Ms. Oliver to have mild or moderate limitations and never opined that Ms. Oliver was unable to work. (TR 20, 399, 400, 404, 409, 414, 418).

Ms. Oliver's treating physician, Dr. Morrow, opined that Ms. Oliver is unable to work due to her bipolar disorder. The ALJ gave no "special weight" to Dr. Morrow's opinion because Dr. Morrow has not treated Ms. Oliver for mental illness, and he does he have any expertise in the field. (TR 20, 326). Additionally, the ALJ found that Dr. Morrow's opinions lack clinical or diagnostic findings, evidence, or an explanation of the evidence relied upon in arriving at his opinions. (TR 20, 326).

The ALJ also considered but gave little weight to the opinions of consultative examiners Dr. Brian Thomas and Dr. Frank Gillis. (TR 19, 21). The ALJ found Dr. Thomas's opinion was inconsistent with Dr. Scott's treating source records from Riverbend. (TR 19). Although Dr. Thomas reported that Ms. Oliver "has 'poor' functions in all areas . . . and even 'poor' prognosis," the Riverbend

records consistently reported that Ms. Oliver had mild or moderate symptoms or limitations with GAF scores of 60 and 65 in the months leading to Dr. Thomas's one-time examination of Ms. Oliver in October 2009. (TR 19, 294, 399, 400, 404, 409, 414, 418). Furthermore, the ALJ noted that

> Dr. Thomas did not have the opportunity to review and consider [the subsequent records going through 2010] which establish the longitudinal record, are consistent with showing [Ms. Oliver] routinely assessed with GAFs of 65, having good findings on mental status examination, and even voicing good benefit from medication and denying symptoms.

(TR 20). The ALJ found Dr. Thomas's mental status report was vague and incomplete because he had relied on Ms. Oliver's subjective complaints and information. (TR 20).

The ALJ also gave little weight to Dr. Gillis's opinion because Dr. Gillis "did not have the opportunity to review and consider new evidence received at the hearing level which gives a more accurate longitudinal picture of [Ms. Oliver]'s conditions."[10] (TR 21, 296).

The ALJ also reviewed a medical source statement provided by Dr. John Goff, who examined Ms. Oliver at her attorney's request. The ALJ commented that Dr. Goff examined Ms. Oliver for the purpose of "generat[ing] evidence for the current appeal," not for treatment of symptoms. The ALJ remarked that he

---

[10] The ALJ did give some weight to Dr. Gillis's findings that Ms. Oliver had minimal functional limitation. (TR 15).

could not ignore entirely "the context in which [Dr. Goff's] opinion was produced." (TR 20). The ALJ also found that Dr. Goff's report is inconsistent with the controlling opinion of Dr. Scott, Ms. Oliver's treating psychiatrist. (TR 21). Specifically, Dr. Goff diagnosed Ms. Oliver as psychotic with severe impairment; however, Riverbend records indicate the opposite, which led the ALJ to conclude that Dr. Goff did not review Ms. Oliver's medical history "in any detail." (TR 21, 372, 399, 404, 406, 409, 414).

## ANALYSIS

To be eligible for disability insurance benefits, a claimant must be disabled. *Gaskin*, 533 Fed. Appx. at 930. "A claimant is disabled if he is unable to engage in substantial gainful activity by reason of a medically-determinable impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)).

A claimant must prove that he is disabled. *Id.* (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003)). To determine whether a claimant is disabled, the Social Security Administration applies a five-step sequential analysis.

> This process includes a determination of whether the claimant (1) is unable to engage in substantial gainful activity; (2) has a severe and medically-determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in the light of his residual functional capacity; and (5) can make an adjustment to other work, in the light of his residual functional capacity, age, education, and work experience.

*Id.* (citation omitted). "The claimant's residual functional capacity is an assessment, based upon all relevant evidence, of the claimant's ability to do work despite his impairments." *Id.* (citing *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. § 404.1545(a)(1)).

Ms. Oliver argues that she is entitled to relief from the ALJ's decision because the ALJ failed to consider her physical impairment of degenerative disc disease and associated pain in assessing her ability to function, and in doing so, disregarded evidence from Dr. Morrow, her treating physician. Additionally, Ms. Oliver argues that, in assessing the severity of her mental impairments, the ALJ failed to give proper weight to the opinions of her treating physician and two independent examining experts.  (Doc. 10, pp. 10, 12, 14).  The Court finds that these contentions are without merit.

### I. FAILURE TO CONSIDER DEGENERATIVE DISC DISEASE AND ASSOCIATED PAIN

"An administrative law judge is under no 'obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.'" *Street v. Barnhart*, 133 Fed. Appx. 621, 627 (11th Cir. 2005) (quoting *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996)). Although the ALJ has the duty to develop a full and fair record, carefully weigh the evidence, and give consideration to each claim that comes before it, "'there is

no rigid requirement that the ALJ specifically refer to every piece of evidence in [its] decision, so long as the ALJ's decision' enables us 'to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'" *Robinson v. Astrue*, 365 Fed. Appx. 993, 995 (11th Cir. 2010) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).

The ALJ did not err in failing to consider Ms. Oliver's alleged degenerative disc disease and its associated pain. Although Ms. Oliver stated in her Disability Report that she was unable to work due to certain specified medical conditions, including a bulging disk and headaches, she did not present evidence of these ailments to the ALJ at the December 30, 2010 or the April 20, 2011 hearings. (TR 142, 40-53, 57-68). The ALJ developed a full and fair record and considered all claims when he questioned Ms. Oliver's counsel at both hearings. (TR 42-43, 64). With the exception of uncontrolled bronchitis, Ms. Oliver stipulated that her mental impairments were her only disabling impairments. (TR 43, 59). The ALJ properly relied on the stipulation when he made his determination. *See Robinson*, 365 Fed. Appx. at 995 (holding that because claimant did not allege that she was disabled due to chronic fatigue syndrome, the ALJ had no duty to consider her chronic fatigue syndrome diagnosis). The ALJ was not required to address evidence in the record, such as Dr. Morrow's findings about Ms. Oliver's

12

degenerative disc disease and associated pain, because Ms. Oliver did not argue that this impairment was disabling.

Ms. Oliver argues that remand is appropriate when "an ALJ fails to consider properly a claimant's condition despite evidence in the record of the diagnosis." *Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1219 (11th Cir. 2001); Doc. 10, p. 11. However, the rest of the quote on which Ms. Oliver relies states that "[t]his holding applies to a claim of [chronic fatigue syndrome] when the claimant submits evidence of a [chronic fatigue syndrome] diagnosis." *Id.* Here, Ms. Oliver failed to present evidence of her degenerative disc disease and the associated pain to the ALJ and in fact stipulated that the ALJ should not consider it. (TR 15, 58-60, 63-64).

Even so, the ALJ considered Ms. Oliver's degenerative disc disease when he acknowledged that Ms. Oliver had lumbago (lower back pain). (TR 15). Although Ms. Oliver argues that the ALJ ignored her "severe pain and well-documented degenerative disc disease," the ALJ explicitly stated that he considered Ms. Oliver's physical symptoms. (TR 15). The ALJ reviewed Ms. Oliver's back pain when examining the opinion of Dr. Gillis, a consultative examiner, who found Ms. Oliver to have "minimal functional limit[ations]."[11] (Doc. 10, p.11; TR 15). The

---

[11] Dr. Gillis reported that Ms. Oliver was able to get on and off the table without difficulty; her gait was normal without the use of an assistive device; she had normal station; she was able to achieve 100% squat and rise; and she could heel/toe walk. (TR 298).

ALJ stated that "[c]onsidering the evidence of the record, including the testimony absent of alleged disability due to physical symptoms or limitations, the undersigned finds these [physical impairments] have not resulted in any significant limitation of [Ms. Oliver]'s ability to do basic work activities, and are, therefore 'non-severe impairments.'" (TR 15). Additionally, "the mere existence of [] impairments does not reveal the extent to which they limit Ms. Oliver's ability to work. . . ." *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)). Although Dr. Morrow, Ms. Oliver's treating physician, noted Ms. Oliver's degenerative disc disease on several occassions (TR 376, 377, 379, 380, 381, 383, 387, 422, 423, 425), the Court finds no evidence in the record that Dr. Morrow suggested she could not work due to her degenerative disc disease.[12]

## II. REJECTION OF DOCTORS' OPINIONS FOR MENTAL IMPAIRMENTS

Ms. Oliver claims that the ALJ failed to consider evidence from her treating physician and the opinions of two consultative examiners in evaluating her mental impairments. (Doc. 10, p. 12). However, Ms. Oliver does not explain what evidence the ALJ purportedly ignored from her treating physician; she does not

---

[12] To the contrary, Dr. Morrow provided a two sentence letter stating that Ms. Oliver is unable to work due to bipolar disorder. (TR 326). As explained in greater detail below, the ALJ did not err in failing to afford any special weight to this opinion.

name one of the consultative examiners; and she does not offer authority supporting either argument. (*Id.*). The only physician's opinion about which she advances a substantive argument is that of Dr. Goff. Therefore, the Court only reviews the ALJ's treatment of Dr. Goff's opinion concerning Ms. Oliver's mental impairments. *See e.g.*, *Outlaw v. Barnhart*, 197 Fed. Appx. 825, 828 n. 3 (11th Cir. 2006) (claimant waived argument that the ALJ erred in not crediting his physical exertional impairments because the claimant "did not elaborate on this claim or provide authority about this claim.").[13]

As a one-time examiner, Dr. Goff's opinions are not entitled to deference. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) ("The opinion of a one-time examiner is not entitled to deference.") (citing *Gibson v. Heckler*, 779

---

[13] The Court assumes that Dr. Morrow is the treating physician to whom Ms. Oliver refers because in January 2010, Dr. Morrow provided a statement that Ms. Oliver could not work due to bipolar disorder. (TR 20, 326). Assuming for argument's sake that Ms. Oliver has not waived her argument related to Dr. Morrow's opinion, which she has, the Court concludes that the ALJ had good cause for providing no "special weight" to Dr. Morrow's opinion. (TR 20). The ALJ noted that Dr. Morrow has not treated Ms. Oliver for mental illness, and Dr. Morrow provided no clinical or diagnostic findings or evidence to explain his conclusion that Ms. Oliver could not work due to bipolar disorder. (TR 20). The Court finds no reference to bipolar disorder in Dr. Morrow's treatment notes. The ALJ noted that Dr. Morrow has no expertise in mental illness and his conclusion "contrasts sharply with the treating psychiatrist [Dr. Scott] and mental health center records." (TR 20). Therefore, the ALJ did not err in rejecting Dr. Morrow's opinion that Ms. Oliver cannot work due to bipolar disorder. *See e.g.*, *Pettaway v. Astrue*, 376 Fed. Appx. 889, 891 (11th Cir. 2010) (ALJ properly rejected a nonspecialist treating physician's assessment that was contradicted by the balance of the medical evidence); *Lanier v. Comm'r of Soc. Sec.*, 252 Fed. Appx. 311, 314 (11th Cir. 2007) (good cause existed to reject treating physician's conclusion that claimant could not work because the opinion was conclusory, and the physician "neither specifically explained how [the claimant's] impairments impacted [] her ability to work no provided objective medical evidence to support his findings") *Fries v. Comm'r of Soc. Sec.*, 196 Fed. Appx. 827, 833 (11th Cir. 2006) (ALJ had good cause for giving minimal weight to treating physician's opinion because the opinion was inconsistent with other evidence of record).

F.2d 619, 623 (11th Cir. 1986)). Moreover, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 Fed. Appx. 410, 418-19 (11th Cir. 2006).

Ms. Oliver argues that the ALJ "cannot simply discredit Dr. Goff's well-formed opinions" simply because Dr. Goff examined Ms. Oliver at the request of her attorney for purposes of generating evidence for Ms. Oliver's appeal. (Doc. 10, pp. 12-13). She is correct; however, the ALJ did not discredit Dr. Goff's opinion. The ALJ stated that "this evidence is certainly legitimate and deserved due consideration. . . ." (TR 20). The ALJ reviewed in detail Dr. Goff's opinion, and the ALJ stated the reasons why he afforded little weight to the opinion.

Dr. Goff noted that he believed Ms. Oliver "is psychotic and she is being treated for psychosis, this represents a severe impairment." (TR 21, 371). In contrast, Ms. Oliver's Riverbend treatment records indicate that Ms. Oliver experienced no psychosis for over six months before she saw Dr. Goff. (TR 21, 399, 404, 406, 409, 414, 418). Those records also show that Ms. Oliver's psychosis was listed as "in remission" or "history of." Thus, according to the ALJ, Dr. Goff based his finding of "severe impairment" on treatment that Ms. Oliver was not receiving at the time. (TR 21, 399, 404, 406, 414, 418). The ALJ found that Dr. Goff's failure to reconcile discrepancies in his findings with Ms. Oliver's Riverbend records suggest Dr. Goff did not review Ms. Oliver's treatment history

in detail. (TR 21). Therefore, the ALJ did not err in affording little weight to Dr. Goff's opinion. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (ALJ properly discounted consulting psychologist's opinion that the claimant had marked psychological limitations because the consultative examiner examined the claimant only once, and the ALJ's findings were supported by the opinion of a psychiatrist who examined the claimant on two occasions). Also, because the ALJ gave little weight to Dr. Goff's opinion because it was inconsistent with the record as whole, not because Ms. Oliver's attorney referred her to Dr. Goff, there is no basis for remand. *See Ferguson v. Astrue*, 2013 WL 4588407, at *9 n.4 (N.D. Ala. Aug. 28, 2013) (holding that "the ALJ's statement regarding Dr. Rogers's status as an attorney-referred physician is not a reversible error because substantial evidence, in the form of inconsistency with the objective medical evidence and Plaintiff's daily activities, supports the ALJ's determination that Dr. Rogers's opinion is entitled to little weight").[14]

---

[14] The only other consultative examiner who provided evidence regarding Ms. Oliver's mental impairments is Dr. Thomas. (TR 293-295). The Court assumes he is the other unnamed independent examining expert to whom Ms. Oliver refers. (*See* Doc. 10, p. 12). Even if Ms. Oliver has not waived her arguments as they relate to Dr. Thomas's opinion, which she has, the Court would apply the same analysis and conclude that the ALJ properly discounted Dr. Thomas's findings. (TR 20). Like Dr. Goff, as a one-time examiner, Dr. Thomas's opinion is not entitled to deference, and the ALJ adequately explained why Dr. Thomas's opinions were inconsistent with Ms. Oliver's treatment at Riverbend. (*See* TR 19-20).

## **CONCLUSION**

For the reasons stated above, the Court concludes that the ALJ's decision is based upon substantial evidence and consistent with applicable legal standards. Accordingly, the Court AFFIRMS the Commissioner's decision. The Court will enter a final judgment consistent with this opinion.

**DONE** and **ORDERED** this September 19, 2014.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE